## HENRY v. BAER et al.

No. 17035.

Court of Appeal of Louisiana. Orleans.

March 11, 1940.

Daniel Wendling, of New Orleans, for appellant.

W. Sommer Benedict, of New Orleans, for appellees.

JANVIER, Judge.

Pearly Henry, alleging that on November 9, 1937, while she was a tenant of defendants, Mrs. Rachel Harris Baer and Mrs. Carrie Harris Zwirn, in the premises No. 1205 Clara Street in New Orleans, she was injured by the fall of plaster from the ceiling of one of the rooms, brings this suit against the two said lessors and prays for solidary judgment against them for $279, fixing $250 as the sum to which she is entitled for her physical injuries and suffering and $29 as the amount of the bill of the doctor who treated her.

Defendants admit that plaintiff was a tenant in the premises, but they deny all the other allegations of the petition. On the trial below and in argument before us their counsel has sought to prove that there was no such accident and that, if there was, the injuries resulting therefrom were trivial.

There was judgment below for defendants, and plaintiff has appealed.

Plaintiff charges that, between 2 and 3 o'clock on the afternoon in question, she was leaning out of a window in the leased premises, looking for her young son whose return from school she anticipated, and that, while she was in the position indicated, a large piece of plaster fell from the ceiling, striking her "on the back of her head and on her back", and that the injuries she sustained made it necessary that she remain "confined to her bed for a period of four weeks" and that during that time, on November 22, "the coldest day up to this date in the year 1937", defendants, "with inhuman cruelty * * * forced plaintiff to get out of bed and put on her dress" and that she "was compelled to remain out in the bitter cold until a humane neighbor offered her shelter".

It is obvious that, if plaintiff was struck by falling plaster under the circumstances alleged, she is entitled to recover for such injuries and losses as she sustained, and, since there can be no question concerning her legal right, if she was injured, it is evident that the judge a quo must have felt that she had not produced convincing evidence concerning the alleged occurrence itself.

There were no eyewitnesses to the falling of the plaster other than Pearly herself and, consequently, since, shortly afterwards, the plaster was found on the floor of the room, it is clear that our brother below must have been convinced by other circumstances that she was not hurt by the plaster, but sustained her injuries in some other manner and was seeking to lay the blame therefor on the fall of the plaster.

Bearing in mind the well-settled rule that we should not reverse such a judgment —based entirely on questions of fact—unless it is manifestly erroneous, we have made a careful study of the record in an effort to determine whether the other circumstances and facts shown by the record are of sufficient probative force to justify the conclusion that the court a qua was obviously in error.

In the first place, we note from the testimony of the attending physician, Dr. Ford N. Jones, that, in addition to injury to her back and to the back of her head, plaintiff, when he examined her, was suffering from a "contusion of the chest" and was "spitting blood". He states that the spitting of blood was caused by the injury to the chest, but he expressed the view that that injury had

not been caused by any "falling object" though it "may" have been so caused. Nowhere in the petition and nowhere in plaintiff's testimony is there the slightest reference to any chest injury, nor to any spitting of blood, and it is thus quite evident that such an injury was not attributed by her to the falling plaster. If she had such injuries, she must have sustained them otherwise than as the result of the falling of the plaster.

It is well to remember that, if she was leaning over and looking out of the window, as she states, no plaster would have struck her on the chest. Her counsel, in his brief, argues that "she was lying on her back after the injury, which accounts for injuries to her chest", apparently meaning that other plaster fell and struck her on the chest after she had first been struck and knocked unconscious by the initial fall. But plaintiff did not testify that any plaster struck her on the chest.

Her daughter, who claims to have heard the noise and to have gone to her immediately, states that "she wasn't lying on her back * * *. She was lying with her face down and the plaster was on her back, where it hit her".

The testimony of the mother and of the daughter in other instances throws doubt on their veracity. Pearly, the mother, if she was hurt as severely as she says she was, —she claims to have been confined to her bed for four weeks—could not have arisen and gone to the corner grocery immediately after the occurrence. Nor would her daughter have permitted her to do so. Yet she admits that she did and Mrs. H. J. Astrigue, the wife of the corner grocer, also says that Pearly came to her store and told her about the falling of the plaster. The daughter says nothing about her mother having gone to the grocery.

Plaintiff also seems to disagree with her daughter as to the latter's presence in the house when the plaster fell, for the daughter states that when it fell she "was in the kitchen making coffee" and "heard the noise in the front room" and "went to the front room where my mother was lying". The mother makes no mention of the daughter's presence at the time and seems clearly to state that she was alone in the house when the plaster fell, for, without referring to her daughter, she says: "I came to myself and I made it to the grocery * * * and then I went back and when I got to the house my daughter was in the kitchen."

We think it significant that she voluntarily sought the aid and advice of Mrs. Astrigue, the grocer's wife, because, when the latter gave testimony rather damaging to plaintiff's case, plaintiff sought to discredit her by stating that there was animosity resulting from an overdue grocery bill for a few dollars. If there was such animosity, plaintiff certainly knew of it and probably would not have gone to the grocery for assistance.

In another instance—unimportant and yet significant where veracity is involved—we find plaintiff contradicted by one of her witnesses. In order to make out a more damaging case against defendants, she stated that on March 22 she was ejected from the premises for non-payment of rent and that that was a very cold day and she says: "I was on the banquette until I was taken in by a neighbor". The neighbor, when called upon to verify the fact that Pearly had been ejected, did so, but stated that she was found not on the banquette but in bed.

Plaintiff's exaggeration of her injuries is manifest. Had she been so severely injured as to require her to remain confined to her bed for four weeks, surely she would have demanded more than $250 for these injuries, and, in contradiction of her statement that she was confined to her bed for so long a time, we find the testimony of Mrs. Astrigue that on several occasions during the few days following the alleged accident, plaintiff called in person at her store. In further contradiction, there is the testimony of Hester Smith and of her son, Willie Smith, both of whom say that, within the period within which Pearly is supposed to have been confined to her bed, they saw her up and about on several occasions.

We consider it also significant that just one week before the occurrence of the alleged accident plaintiff had been notified to vacate the premises for non-payment of rent.

Taking into consideration all of the circumstances to which we have called attention, we find that we cannot say that our brother below was manifestly in error in reaching the conclusion that no such accident had actually occurred.

It is not necessary that we brand as false the testimony of the doctor who treated plaintiff, for it is quite evident that she did have certain minor injuries, which in some manner she had sustained, and it is quite possible that she exaggerated these injuries and the extent of her suffering when she called in the doctor.

Had our brother below found for plaintiff, it would have been necessary that we affirm his judgment, but, having reached a contrary conclusion, we without hesitation state that the judgment is not manifestly erroneous.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is affirmed at the cost of plaintiff.

Affirmed.